### BERTRAND *v.* ARCUEIL.

Proof of the existence of disease in a slave before the sale, and of his death from that dis-
   ease within three weeks after the sale, raises a very strong probability that the disease
   was incurable at the date of the sale ; and very clear and cogent proof should be required
   from the vendor to overthrow the presumption.
Art. 2518 C. C. which declares that "the redhibitory vice of one of several things sold together
   gives rise to to the redhibition of all, if the things were matched, as a pair of horses or a
   yoke of oxen," is inapplicable to the case of a family of slaves, consisting of a father and
   mother, sold as field hands, and their infant child.  *Per Cur.*  The right to a total rescision
   only arises, when the things sold are so dependant on each other for their usefulness, that
   the loss or unsoundness of one would render those remaining comparatively valueless,
   and where their natural dependence and peculiar fitness relatively to each other in a par-
   ticular service, was the principal motive of the purchase.  That the two examples given in
   art 2518 are mere illustrations of the rule, and that the principle may be extended to
   other things, is conceded ; but the things must be *matched*, in the sense in which that
   term is used in the Code.

APPEAL from the Parish Court of New Orleans, *Maurian*, J. *Soulé*, for the
plaintiff.  *Piliè* for the appellant.  The opinion originally formed by the
court in this case was pronounced by

SLIDELL, J.  In May, 1847, the plaintiff became the purchaser at auction of
three slaves, for a total price of $1100, payable at one year.  They were des-
cribed in the advertisement as Harry, a field hand, Hannah, his wife, and their
child, Huldah.  The advertisement stated—" tous ces esclaves sont garanties des
vices et maladies prévus par la loi, et sont recommandé sous tous les rapports."

The mother and child became seriously ill two or three days after their deliv-
ery to the purchaser, and died within three weeks after the sale.  The testimo-
ny satisfactorily establishes that the disease of which they died existed in both
anterior to the sale ; and, although there was some conflict of opinion among the
professional persons examined, we think the judge below correctly concluded
that it had arrived at an incurable stage in both before the sale, although proba-
bly accelerated, in the case of the mother, by a miscarriage occurring after the sale.
The existence of the disease before the sale, and the death from that disease with-
in three weeks, raise a very strong probability that it was incurable at the date of
the sale.  Very clear and cogent proof that it was curable should be adduced by
the seller, to overthrow the presumption.  See *Desdunes* v. *Miller*, 2 N. S. 53.
*Thompson* v. *Willburn*, I. N. S. 460.

But it is contended that the plaintiff cannot maintain his redhibitory action,
because he was aware of the existence of the disease before he accepted the
slaves and gave his note for the price.  That symptoms of disease were discov-
ered by the physician employed by the plaintiff to examine the slaves is true ;
but there is no reason to believe that the physician, or the purchaser, were
aware of its extent.  Had the purchaser known the real condition of the slaves,
we must suppose that he would not have made the purchase.  We consider him
as having believed the symptoms discovered to be temporary and not of a grave
character, and as having given his note in good faith, relying not only on the war-
ranty implied by the law, but on the express warranty and strong recommenda-
tion held out by the advertisement.  See *Hepp* v. *Parker*, 8 N. S. 476.

It is argued that the existence of redhibitory disease in two of the slaves did not authorise the rescision of the entire sale, and that the plaintiff is only entitled to a reduction of the price, according to a reasonable estimate of the several items of the sale made in block.

BERTRAND
*v.*
ARCUEIL.

We have seen that the slaves were described in the advertisement as bearing towards each other the relation of husband and wife, and parent and child, and that they were sold for a total price. The solution of the question depends upon the just interpretation of article 2518 of the Code. That article declares that " the redhibitory vice of one of several things sold together gives rise to the redhibition of all, if the things were matched, as a pair of horses or a yoke of oxen." In construing this article we must consider its spirit, and are not to limit it to the cases literally enumerated, which are given by way of illustration. The principle announced in it is found in the roman law, Digest, Lib. 21, title 1; the examples there given are the same as stated in our Code. We are there told that if horses are sold as a match, a redhibitory vice in one gives rise to a rescision of the entire sale ; but that, if four unmatched horses are sold at a single price, the defects of one would not be a cause of a rescision of the entire sale ; that the rule would be the same if slaves be sold together for an entire price, unless they could not be reasonably separated, as, for instance, if they were a company of tragedians, or miners. The doctrine as explained by the commentators is, that the mere entirety of the price is not decisive ; but that the enquiry must be, when the things sold are alike principal objects of the sale, whether they have been sold as making a whole together, and as being such that one would not have been sold without the other, or whether they are independent one of the other. In the former case, the redhibitory vice of one of the things sold involves the right of exercising the redhibitory action for the whole. In the latter, the action can only be maintained with regard to the particular thing affected with the vice. See Merlin, Repertoine, *verbo* Redhibitoire. Pothier, Contrat de Vente, p. 142.

Now it may be true, as argued by the defendant, that the death of the slaves Hannah and Huldah did not affect the value of the slave Harry, with reference to the purposes for which he was bought, to as great an extent as in the case of the slaves forming a company of comedians, cited in the roman law. But the spirit of the rule is applicable. Slaves constituting a family would probably labor more cheerfully and harmoniously together, and, by consequence, would be more useful than those not so related ; and besides natural justice and humanity would dictate that they should be sold together. It was in this just and benevolent sense that Voet, in his commentary on the Pandects, says : Unde si duo jumenta sint vendita tanquam paria et unum in ea causa sit ut redhiberi debeat, utrumque redhiberi potest ; idemque in triga atque quadriga vendita jaris est ; uti et quoties res plures separari nequeunt sine magno incommode, vel *ob rationem pietatis* ; veluti, ne liberi a parentibus, ne contubernio juncti a se invicem separentur ac divellantur. Voet's Com. Lib. 21, title 1.

The counsel for the defendant has cited the case of *Andry* v. *Fox,* 6 Martin, 696, in which judge Martin, after learned argument, held that, although several slaves be bought together and for a single price, the sale will not be rescinded for all, if any number less than the whole have any redhibitory defect. We do not consider our present opinion as conflicting with that decision. It does not appear that the slaves in that case were members of the same family. If such had been the case, it could scarcely have been overlooked by the counsel or the court.

The case of *Ledoux* v. *Armour,* which was a sale of a number of coils of bale rope, certainly cannot be considered as covering the present case.

We conclude, therefore, that the court below did not err, in rescinding the entire sale.

---

*Pilié*, for the appellant, for a rehearing. It is admitted as a general principle that, where one of several things sold together is tainted with a redhibitory defect, the sale should be rescinded for the whole, if it appear that the vendee would not have bought the others without it. But, *in Louisiana*, that principle has been narrowed down by art. 2518 of the Civil Code, to the only case where the things sold together are *matched* (appareillés). It is true that the examples mentioned in that article are cited by way of illustration, and do, by no means, prevent its being applied to other cases falling within its spirit. But those cases must necessarily relate to things that are *matched*.

It may be *probable*, as urged by the court, that slaves constituting a family would labor more cheerfully and harmoniously when together, than separated. But when a part of that family has died, I am at a loss to conceive how the rule can be made to apply to the survivors, who are severed from the others by the will of God.

Another ground relied upon is, that "natural justice and humanity would dictate that slaves so related should be sold together." I agree to that. But I submit that the direct and inevitable consequence of the rule established in the judgment complained of, would be to render very difficult, if not absolutely impossible, a compliance with those dictates of natural justice and humanity. For, no man being possessed of a family of slaves, would be prevailed upon to sell them together, if he knew that a vice or malady in one of them might expose him to a redhibitory action for the whole. To avoid the application of that rule, he certainly would sell them separately.

The passage quoted from Voët, which is but a repetition of what Ulpian and Paulus had said before on the same subject ( Muhlenbruchii Doctrina Pandectarum, vol. 2. p. 579 no. 6593 *et seq.*), might have been entitled to much weight before the Code of 1825 was adopted. But under the Code of 1825, our position is different. Besides, the spirit of the remarks made by Voët, and before him, by Ulpian and Paulus, does not apply to cases like this. These authors suppose a case where the slaves sold are nearly related to each other, and say that, *ob pietatis rationem*, if one of them is to be *returned* on account of a redhibitory defect the other should also, because they ought not to be separated. *Hi non sunt separandi*, says Ulpian. And this clearly presupposes that the slaves afflicted with the redhibitory vice, are *living*. But if they are dead, and the restitution of the price is alone prayed for, it is plain that the *ratio pietatis* no longer exists, as the separation is one which man has not the power to prevent or remedy.

But admitting the old rule to be still in force, where is the proof that the plaintiff would not have purchased the surviving slave without the others? Is it not a fact of daily occurrence in this State, that slaves situated as these were, are sold separately? Was even this connection between the slaves mentioned in the notarial sale passed to the plaintiff? And although the circumstances of this connection may have induced the plaintiff to purchase the slaves in question, was it the *motif déterminant* of the purchase? unless this is shown, and it certainly was not in this case, the plaintiff cannot recover even under the old rule.

The judgment of the court (concurred in by three judges,) was finally pronounced by

KING, J. After much consideration, the majority of the court are of opinion, that the interpretation given to the 2518th article of the Civil Code, in the decision heretofore rendered in this case, extends the principle announced in that article beyond its just limits. We think that both the letter and the spirit of the law forbid its application to a case like the present, where the slaves sold bear to each other the relation of husband and wife, parent and child, two of whom have died of redhibitory diseases. The article is as follows :

"The redhibitory vice of one of several things sold together gives rise to the redhibition of all, if the things were *matched* (appareillés), as a pair of horses or a yoke of oxen."

That the two examples given are merely illustrations of the rule, and that the principle may be extended to other things, is conceded. But the things must be *matched*, in the sense in which that term is used in the Code. The examples given both in the Code, and in the authorities which have been referred to in illustration of the rule, we think show the spirit and meaning of the law to be, that the right to a total rescision shall only arise, when the things sold are so dependant the one upon the other for their usefulness, that the loss or unsoundness of one would render those remaining comparatively valueless, which mutual dependence and peculiar fitness of the things purchased relatively to each other in a particular service, formed the principal motive for the contract. We are of opinion that the rule does not embrace slaves sold together in families, as field hands, as was the case in the present instance, there being no such necessary dependence of one member upon another for its usefulness. If the principle be recognized to the extent contended for, then when large families are sold together for one price, as daily occurs, the death of one of its members, from a redhibitory defect, would give rise to the rescision of the entire sale. Yet it can scarcely be contended that the death of an infant, or of one of several children, would materially impair the value of the surviving father or mother. A case for a total rescision of the sale would probably occur, if the mother or child were affected with a redhibitory vice, and the child should be below the age at which the law permits them to be separated. A rescision of the sale as to one, would in that event probably vacate it as to the other. But this rule depends upon legislative enactment, founded on motives of humanity, and would cease to apply if death had severed the relation prior to the institution of the action.

We do not understand the correctness of so much of the opinion heretofore rendered, as determined that two of the slaves purchased by the plaintiff, to wit, the mother and child, died of diseases existing at the date of the sale, to be impugned. The evidence leaves no doubt that the third slave, *Harry*, died of a disease contracted several months subsequent to the sale.

Under the view which we now take of the law, the loss of the slaves *Hannah* and *Huldah*, must be borne by the defendant, and that of the slave *Harry* by the plaintiff. But as the evidence does not enable us to determine the separate value of the slaves, the cause must be remanded, for the purpose of ascertaining the deduction to be made from the rate given for the price.

The judgment of the District Court is, therefore, reversed, and the cause remanded for further proceedings; the appellee paying the costs of this appeal.

SLIDELL, J. *dissenting.* I adhere to the opinion formerly adopted in this case. I consider the sale of a family of slaves as coming within the spirit and intendment of art 2518. My reasons for that view have been already expressed, and I may add, by way of practical illustration, that I feel assured that any one desiring to purchase servants, if he had an offer of three slaves bearing to each other the relation of husband and wife, parent and child, as in this case, and of three others having equal physical and other qualities, but not so related, would give a higher price for the former than the latter.

I also consider the date of the sale the controlling point of time, to which reference is to be had. If the nature of the things sold was, at the date of the sale such as to subject the contract to the right of a total rescision, the subsequent events, adverted to by the defendant's counsel, ought not to be permitted to affect the right. The contract was completed between the parties, at the date of the sale. The legal incidents of a contract are not to be severed from the contract itself, of which they form a part. The right of rescision, if the things sold be

BERTRAND
v.
ARCUEIL.

affected with redhibitory vices, is as much a part of the contract, as the price, or any other ingredient of the contract. The law implies the right, and the implication of the law is as efficient as the expressed will of the parties. The case then stands as though it had been expressly written in the act of sale, the "vendee shall have the right to rescind the sale for the whole, should the father or mother of this family now sold be found to be affected with a redhibitory vice."

To the authorities cited in the original opinion, I may add the following from the Pandects:

Hoc edicto expressum circa paria mularum. Sed et quotiescunque manifestum est quem aut non venditurum, aut non empturum fuisse nisi omnia, una venditio videri debet, licet in singulas res sint pretia separatim constituta.

Plerumque propter morbosa mancipia etiam non morbosa redhibentur, si separari non possint sine magno incommodo, vel ad pietatis rationem offensam. Digest, lib. 21, tit. 1, s. 35.